Oral argument not to exceed 15 minutes per side, Mr. Edwards for the opponent. Good morning, may it please the court. Bruce Edwards, Michigan assistant attorney general for the warden, the appellant. I'd like to reserve two minutes for rebuttal. Mr. Brannon was convicted of first degree criminal sexual conduct for sexually penetrating his six-year-old niece's rectum with a crayon. The district court found that counsel was ineffective because he did not further investigate and call an expert witness. As this court knows, a Strickland claim has two components, deficient performance and prejudice, and the failure to establish either prong precludes relief. Now the last reasoned state court opinion in this case is from the Michigan Supreme Court, and they held that counsel's performance was not deficient. I'm asking this court to reverse because when the Michigan Supreme Court ruling is reviewed with double deference that Strickland and AEDPA require, it cannot be said that the Michigan Supreme Court ruling was objectively unreasonable. In analyzing deficient performance, the Supreme Court has said the court is supposed to look at the time of the error, all the circumstances, and do not use hindsight review. That is forbidden, hindsight review. Now this is not a case where counsel failed to do any investigation. In fact, the record establishes counsel did quite a bit of investigating. Originally, the prosecutor enlisted an expert witness, Dr. Okla, and defense counsel then contacted three different experts, and he ended up retaining Dr. Campbell. Then unexpectedly, two weeks before trial, the prosecutor announced that she wasn't going to call Dr. Okla as an expert. At this point, the defense counsel revisited the issue. Should I call an expert? Dr. Campbell? Did the defense counsel mistakenly think that he couldn't contact Dr. Okla because she was a prosecution expert? Yes, Your Honor, I admitted that in my brief. That was a mistaken thought. But as I also pointed out, under Harrington v. Richter, we're supposed to look at the objective behavior and not the subjective reasons why counsel did what he did. And it turns out there's a Sixth Circuit opinion that specifically says that there's a good reason why defense attorneys frequently don't contact the prosecutor's expert, and that's because you don't want to give away what you might want to ask them about on cross-examination. But didn't the defense counsel know that the prosecution was not going to call Okla at that point? Well, I was talking about prior, when she was on the list as a prosecution expert, that would be a reason. And then two weeks before trial, that's right. Two weeks before trial. Two weeks before trial. The prosecution indicates they're not going to call her. Correct, Your Honor. So then the mistake that the defense counsel made seems to be a critical mistake, showing deficient performance with no basis for it. Well, actually, Your Honor, counsel had an expert. He was ready to call an expert. And then the prosecutor says, two weeks before trial, I'm not going to call an expert. So at that point, he stopped and he said, well, what should I do here? Because I was planning on calling an expert, but now they're not going to call an expert. So he could have gone ahead with his expert that he had, but he was concerned because his expert, Dr. Campbell, had told him, I'm going to have to admit some things, and one of the things I'm going to have to admit, that the 10-year delay in reporting a criminal sexual assault is not uncommon. Or the defense counsel could have contacted Dr. Okla, the state expert, the prosecution's expert, and realized that the reason why the prosecution wasn't going to call Okla was because she was going to have very negative testimony for the prosecution. I don't believe the record supports that. The record shows that Dr. Okla had not formed an opinion when the prosecutor chose not to call her, had never even sent her the preliminary examination transcript or either of the interviews, the Illinois interview or the Monroe County, Michigan interview. So Dr. Okla really didn't have an opinion with reference to this particular victim. Right, but we have to be wondering what should the defense counsel have thought when the defense counsel hears that the prosecution is not going to call Dr. Okla. I agree with that, and defense counsel says his thought was, this is good news for me because Dr. Campbell told me that he and Dr. Okla both would have testified as experts that delayed reporting of sexual assaults is common and it does happen. And he thought a jury would be skeptical of a 10-year-old report, and he didn't want expert testimony for the jury to hear from an expert that that's not that unusual after all. And also keep in mind, this is two weeks before trial. What are the chances that you're going to be able to contact an expert, send them a preliminary examination, two interviews, and get a report back, and yes, I'm willing to testify all within two weeks, when he's busy trying to get ready to try the case that's based largely on alibi. So I think that there is a reasonable argument that counsel, he weighed the pros and the cons. In fact, there's testimony that he spoke to a co-counsel from Illinois about the pros and cons of calling an expert when the prosecution was not going to call an expert. And he also discussed this with his client, Mr. Brannan, several times. And Mr. Brannan ultimately agreed, yeah, let's not call an expert. Judge Cole, I cited an opinion in my brief, Jackson v. McQuegan, on page 45 and 46 of my opinion, that you wrote and you said it cuts against a claim that counsel was ineffective if the client agrees with counsel not to call the expert. And that is what happened here. Now, counsel is entitled to a heavy presumption of deference. And in my argument, the district court did not grant it. Now, who was defense counsel? Defense counsel had been an attorney over 30 years. He had tried over 50 criminal jury trials. He'd been three years as a prosecutor. And he'd had an expert ready to go who said, my testimony is going to have some good and some bad in it. And the bad, once again, is these delayed reports are not unusual. It's not a sign that it's a false accusation. He said he didn't want to be the person that provided that testimony because he thought the jury would be very suspicious of the 10-year delay. So he made a reasonable strategic decision. I'm going to go with alibi and the ability to argue that you shouldn't believe the victim because of the long delay and because she changed the year of the alleged assault, and she added details after her first telling of the story. Mr. Edwards, did you or anyone else, not you, but the defense attorney or the court or whatever, ever discover why the state had backed up on calling their experts? No, Your Honor. The only thing I do know is that for a year and a half, the charge had been that the crime occurred in the summer of 1996. And then, like a month before trial, they filed an amended information and said it was the summer of 1995. So the prosecutor's case had changed quite a bit because there had already been a notice of alibi as to the summer of 1996. So it could have been somehow related to the change in the date as to when the alleged incident occurred, but I don't know specifically, Your Honor. Why would that affect calling the expert, though? Well, it's one more thing. Well, excuse me. On the prosecution's perspective, it's like they're sort of regrouping. Oh, my word. For the preliminary examination, the victim said summer of 1996. Our original information says summer of 1996. Now we've had to change to the summer of 1995. There's a regroup as to how the prosecution is going to move forward. And maybe they thought that Dr. Okla would not look favorably on the fact that they changed when the incident occurred. I don't know. That's only speculation, Your Honor. So the Michigan Court of Appeals reached the opposite conclusion of the Michigan Supreme Court. What's wrong with the Michigan Court of Appeals analysis? Well, if you read the dissent in the Michigan Court of Appeals, the dissenter specifically says that the majority was using hindsight review, and that's forbidden. And under AEDPA and under the Ilst case, a habeas court is only to review the last reasoned decision, and the last reasoned decision was from the Michigan Supreme Court. It's sort of amazing to think of the Michigan Supreme Court decision being a reasoned decision when it is one paragraph long and one sentence on this topic, and reversing their own state court of appeals, majority of two, which you've cited the dissent in the Michigan Court of Appeals, but obviously there was the majority, which had a different rationale. But they did give a reason. I mean, they laid it out. Reasonable strategic decision. He contacted the expert. He discussed the idea of delayed reports, and then he made a reasonable decision not to call because he was afraid the expert would provide at least some testimony that might help the prosecutor. That's a reasoned decision. I don't think there's any doubt about that. And I don't think that's objectively unreasonable under the circumstances where counsel was ready to go with an expert two weeks before trial. This is not gearing up for a trial. This trial lasted four days. The defense counsel called four witnesses. He introduced 13 sets of documents to help prove his alibi. He was a very active defense attorney, and he made a reasoned judgment that it might hurt me more than help me to have an expert witness, especially when the prosecutor is not calling an expert. And I don't think there's any U.S. Supreme Court case that has ever found that a defense attorney was ineffective for not calling an expert, especially when the prosecutor didn't call an expert himself. Now, an alibi defense, that's a strong recognized defense, and arguing to the jury, which defense counsel did, you've got a 10-year delay. She didn't even talk about the crane incident the first time she revealed what happened here, and then she changed the year that it happened. These are reasons not to find my client guilty beyond a reasonable doubt. Those are the arguments of a competent defense attorney. Thank you. You know, I probably shouldn't say this, but I wonder if the problem with everybody's view of this case is this was a single incident. It was terribly unfortunate. It probably affected this child. But a 20- to 40-year sentence is a pretty stiff sentence for what was involved here. Well, if it occurred today, it would be a 25-year minimum sentence in Michigan because it's first degree and it involves a child with penetration. In Michigan under current law, it's a 25-year minimum sentence. And also the defendant was a repeat offender. He had just gotten out of jail for serving on four counts of criminal sexual conduct in the fourth degree as to another relative of the victim in this case. So this was not a first offender situation, and this was the most serious kind of criminal sexual conduct. I guess I'm just kind of surprised that there wasn't some kind of plea negotiation here that would have produced a slightly more accurate offense and sentencing level. But that's just... Sure. I'm not aware if there was any plea discussions as to this charge, Your Honor. All right. But he did get a very favorable plea on the first charge and the other relative's victim. Now, the district court was clearly influenced by the testimony that Dr. Oakley and Dr. Campbell gave at the Ginther hearing. But as I've argued, when you look at deficient performance, you have to evaluate what the attorney did and when he did it. And this testimony did not exist when he made his decision to go forward without an expert. So that testimony from Dr. Oakley and Dr. Campbell may be relevant to the prejudice component, but it is not relevant to the deficient performance component. And unless the Michigan Supreme Court ruling that counsel's performance was not deficient is objectively unreasonable, you never reach the question of whether or not there was prejudice here. Now, other attorneys might have handled this case differently. They might have gone ahead with Dr. Campbell. But the Supreme Court has said even the best attorneys will represent their clients in different ways. There's no one way to properly represent somebody, and you can't criticize the attorney because a reasonable strategy doesn't bear fruit. Some fair-minded jurists could agree with the Michigan Supreme Court decision, and under that, habeas is supposed to be precluded. So the state would respectfully ask this court to reverse the district court's grant of habeas relief. And if we were to reverse here, there are still another eight or nine or ten claims. That's correct, Your Honor, and they still need to be resolved. They need to be resolved by the district court. It would be a remand to resolve the other issues. That's correct, Your Honor. Thank you. Okay, thank you. Good morning. Morning. My name is Phil Komorski. I will be attempting to answer the allegations or arguments that were put on by the appellant. As I understand the appellant's argument here, he's claiming that there was a reasonable decision made by the defense counsel at the time he was told that the prosecution was going to proceed with that expert testimony. The problem with that argument is he never found out what that expert testimony was going to be because he was under the mistaken belief that the appellant apparently agrees was mistaken that he could not talk to this expert under an attorney-client privilege. And as the district judge notes in his opinion, any law student who took any type of criminal procedure class would know differently. So it's quite surprising that he would even come to that conclusion. But the bottom line is the appellant's whole argument is the testimony at the Ginther hearing did not exist at the time that the quote-unquote reasonable decision not to call experts was made by defense counsel. Why did it not exist at the time? Because he never bothered to contact Dr. Okla. He never bothered to contact her when he could have interviewed her as a potential prosecution witness, and he never concluded or found out, for that matter, that Dr. Okla was never given any discovery materials in this case to even form an opinion in the first place. So when he was consulting his own expert, Dr. Terrence Campbell, Dr. Campbell was basing his conclusion that he would give both good components and bad components  based on testimony that Dr. Okla apparently gave in another case. He was not basing this on any opinion she may have formed on this case. Why didn't she form an opinion on this case? Apparently the prosecutor never gave her anything and defense counsel never followed up. But even more importantly, as Judge Moore indicated, when defense counsel became aware that Dr. Okla was not going to be called as a prosecution witness, well, even under his mistaken belief that he couldn't contact her under this so-called privilege he felt existed, well, apparently that doesn't exist now. So contact her. Find out what she would have testified to. And if you find out that she was never provided anything, provide her with everything you have. That's the whole basis of pretrial investigation. Why isn't, given that we have to give deference to the Michigan Supreme Court's determination that this was a reasonable strategic decision to forego expert testimony, why isn't it something that we have to defer to that the defense counsel decided it was better to go with the alibi and other witnesses and the questioning of witnesses as opposed to bringing in experts, whether it's bringing in Campbell or finding out what Okla would say and then bringing her in? Two things. Number one, the decision by the Michigan Supreme Court, as Your Honor indicated, is extremely brief and basically boils down to their conclusion that he made a reasonable decision not to call expert testimony because he felt his own expert would give testimony unfavorable to the prosecution. Well, had he engaged in any reasonable investigation in finding out what Dr. Okla would have testified to, it would have been clear that Dr. Campbell would have given no testimony that would have been favorable to the prosecution. How is that clear?  Yes. Yes, because Dr. Campbell testified at the Ginter hearing that when he was initially consulted by the defense counsel, the only thing he was told is that the prosecution intended to call Dr. Okla, who apparently was pretty prestigious in this particular area, and he indicated a couple things. One, that he knows who Dr. Okla is, and based on what he reviewed when she testified in an unrelated matter, that he may have to agree with some of the things she testifies to. But it was never clear what Dr. Okla was going to testify to in this case because Dr. Okla, as the appellant indicated, never reviewed this case. So once the defense attorney becomes aware that she's no longer a prosecution witness, it was incumbent upon him to contact her, find out if in fact she would have testified. But why couldn't the defense counsel make a reasonable decision, a strategic decision, that it's better to go with the alibi and drop the expert, given that Campbell was equivocating a little bit, and given that the defense counsel didn't know anything about what Okla was going to say? I understand that you could say it would be better strategy to figure out what Okla was going to say, and maybe if we were the decision makers in the beginning, we would say we would go with the Michigan Court of Appeals to judges. Well, because presenting testimony through these experts would have in no way undercut the alibi defense. Because the bottom line here, the only thing the prosecutor had against Mr. Brannon was the testimony of the complainant. So presenting alibi testimony coupled with expert testimony that tends to undercut the believability of the story that she is giving to the jury. But the problem is, it wasn't just the alibi. It was the alibi plus the attack on the victim's credibility because of the delay in reporting it. Correct. I mean, those two things go together quite nicely. If he knew that one or both of these experts had testified in other trials that, yes, it was common for such a delay to happen, I mean, he was walking away from that as fast as he could. Apparently so. Yeah. So, I mean, that wasn't going to help him. If he could get somebody in there that said, well, a ten-year delay is a terrible thing, she might have come up with all kind of fantasies in those ten years, that would have been helpful. Well, I think that's exactly what the experts were going to testify to. I thought they were going to testify to the fact that a ten-year delay is not unusual. No, they were going to testify that due to her age, her memory capacity at the time of the alleged crime, her failure to disclose all of the details at the first telling and adding details at each additional interview, and more importantly, the manner in which the victim was interviewed by the detective in Kane County, all added to questioning whether or not she could remember in vivid detail the details that she alleged occurred ten years ago when she was only six years old. No testimony was offered to explain any of that away. And couple that with the fact that the officer in Kane County testified at trial, apparently as the prosecutor's own expert, that delay in reporting is not unusual. And there was nothing offered to either attack that or to show why, in this case, the credibility of this particular complaint is seriously called into question. And the bottom line is because the manner in which the defense counsel conducted his investigation, the jury was never able to adhere to any of this. And as this court is aware, every tribunal that has – appellate tribunal that has heard this, with the exception of the Supreme Court, has all agreed this is ineffective assistance of counsel. Let me just ask this so I understand this. All right. The problems with her memory and her subsequent testimony, that did get into the record, didn't it? That she had changed the story and that all of that came out. Yes, it did come out through cross-examination. But I think when you're dealing with children as victims, which any jury that comes in has a severe prejudice against any case involving children to begin with, it's incumbent upon defense counsel to explore all avenues that would undercut the credibility of that child victim because there was no other evidence in this case, no physical evidence, no additional witnesses. The case rose and fell on the believability of the complaining witness in this case. And as I indicated before, alibi and expert defenses were not conflicting defenses. They would have totally complemented each other. And in fact, Dr. Okla testified at the Gintha hearing. She would have testified favorably for the defense, which is, I think, the answer to why the prosecutor all of a sudden decided to dump her two weeks before trial. So I think the bottom line is, was this a reasonable strategic decision? And without following up on reasonable investigation, I think the answer is no. As all of the tribunals, the trial court in Monroe County concluded was ineffective assistance. The Court of Appeals concluded this. The Court of Appeals, though, was two to one. That is correct. And the problem, arguably, with the Michigan Supreme Court decision is it seems to think this is so obvious that they only need to write this little bit, and that the only separate justice is Kavanaugh, who would have denied leave to appeal, which is in favor of your client then, but doesn't bother to explain anything. So given the Supreme Court's direction to us to look at the last reasoned decision, and there is a statement of reason here that the Michigan Supreme Court does not think this is deficient performance. And again, I think that also calls into question the issue of prejudice, whether there should be a de novo review as to that. But we have to decide whether there's deficient performance. I agree. Under the deferential standard. And based on the Supreme Court's own reasoning, I think it's clear there was deficient performance because the reasonable strategic decision they are claiming defense counsel made was not an objective reasonable decision because he did not engage in the appropriate pretrial investigation of these witnesses to make that conclusion. He didn't interview Okla. He interviewed his own expert based on incomplete determination as to whether or not Dr. Okla was going to contradict what Dr. Terrence Campbell was going to testify to. So, you know, I'm parsing this decision once again. Yes. The Michigan Supreme Court says the record clearly establishes defense counsel discussed issues of delayed reporting with a potential expert witness and made a reasonable strategic decision to forego expert testimony in light of the possibility that the witness might also provide testimony favorable to the prosecution. So the Michigan Supreme Court arguably is not deciding anything with respect to deficient performance vis-à-vis Okla. Is that right? I agree, yes. Did the court have any further questions? Apparently not. All right. Thank you, Mr. Cousins. Thank you. Morski. So I'm curious how you would address that parsing of the Michigan Supreme Court opinion. I believe they are referring to Dr. Campbell. Yes, I believe so, too. I would agree that they were referring to Dr. Campbell because he did not speak to Dr. Okla. He freely admits that. But the question is, was he constitutionally compelled to speak to Dr. Okla either before or after the prosecutor, you know, decided not to use her? And the answer is no. But do we have a reasoned decision vis-à-vis deficient performance by the Michigan Supreme Court on the question of whether there was deficient performance in not investigating Dr. Okla? I don't think that the claim was ever that narrow. It was like you should have called an expert and here's what you could have done. But, you know, in defense counsel's mind, he had an expert. The real question was, am I going to go with my expert, not am I going to get a second expert? Yes, but practically when you know that one side has contacted an expert and then they decide they're not going to call the expert, most of the time people would assume that there was a problem with that expert. So I really, sorry? They might assume that, but we actually learned from the Ginther hearing that Dr. Okla had not formed an opinion with reference to this case at the time the prosecutor dropped her. And did the Ginther hearing explore why the prosecutor dropped her? She said she did not know. And, of course, the prosecutor doesn't have to explain and did not. That's what I was wondering, whether the prosecutor had given an explanation of why he or she dropped her. There was not an explanation given. I speculated perhaps it was when they changed the year of the incident that they were regrouping and said, you know, maybe we don't need an expert. But I have to contradict counsel. Dr. Okla specifically testified, page ID 2147. I would have been able to testify that people do frequently delay the first reporting, and that's based on research with adults as well as children. So that testimony would not have helped the defense. Well, there was some mention of the fact that the defense attorney knew what one of these states' experts was going to say based on what that person had said at a previous trial. Dr. Campbell said, I'm familiar with Dr. Okla. I'm pretty sure she would cite the same reports I would. And then they actually got a transcript as part of defense counsel's investigation. He got a transcript of Okla's testimony in a different case and actually spoke to the attorney from that other case. Okay, so that was Okla that that reference was to. Who was the other expert? Dr. Campbell. That was the other state's expert? No, no, the state never had more than Dr. Okla. Oh, I thought they had two. No, no, no, you're wrong. Okay, thank you. Campbell was for the defense counsel. He was going to use Campbell if the state went forward with Okla. When they dropped Okla, he evaluated, weighed the pros and cons, got an agreement from his client not to call an expert, and then neither side called an expert. I've got it. So I appreciate it. I ask the court to reverse and remand for resolution of the remaining issues. Okay. Thank you. Counsel, we appreciate your arguments today. The case will be submitted, and the clerk may adjourn court.